469 So.2d 889 (1985)
HUMANA, INC., d/b/a Cypress Community Hospital and North Shore Medical Center, Appellants/Intervenors,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
PLANTATION GENERAL HOSPITAL, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES and North Broward Hospital District, d/b/a North Broward Hospital, Appellees.
Nos. AY-422, AY-423.
District Court of Appeal of Florida, First District.
May 16, 1985.
*890 John H. French, Jr., and James C. Hauser of Messer, Rhodes & Vickers, Tallahassee, for appellant/intervenor Humana, Inc.
Thomas H. Sheehan, III of Moyle, Flanigan, Katz, Fitzgerald & Sheehan, P.A., West Palm Beach, for appellant Plantation General Hosp.
Jay Adams, Deputy General Counsel, Dept. of Health and Rehabilitative Service, Tallahassee, for appellee HRS.
SMITH, Judge.
Appellants challenge the validity of Rule 10-5.11(15), Florida Administrative Code, on the following grounds: (1) the rule's formula methodology[1] for determining need for new cardiac catheterization laboratories in a service area focuses undue attention on a single statutory criterion to the exclusion of the remaining criteria in Section 381.494(6)(c), Florida Statutes (1983); (2) the use of the year 1981 as a base year and the use of the 600 figure have no rational basis in fact; (3) the rule does not prohibit the addition of a second lab by an existing provider, and thus results in an unfair advantage to existing providers; and (4) the economic impact statement fails to comply with Section 120.54(2)(a), Florida Statutes (1983), and is inadequate. We affirm the well-reasoned order of the hearing officer of the Division of Administrative Hearings upholding the validity of the rule.
One who attacks the validity of a rule on the grounds of arbitrariness or capriciousness carries the burden of demonstrating by a preponderance of the evidence that the rule is not supported by fact or logic, was adopted without thought or reason or is otherwise not based upon competent, substantial evidence. Agrico Chemical Company v. State, Department of Environmental Regulation, 365 So.2d 759, 763 (Fla. 1st DCA 1978). We have thoroughly examined the record and briefs filed by the parties and we find that appellants have failed to show that Rule 10-5.11(15) is irrational and without basis in fact. It does not preclude consideration of statutory factors other than numerical need. It is true, as appellants assert, that an existing provider may add a second lab so long as the cost of instituting the new lab does not exceed $600,000 without going through the certificate of need process, Section 381.494(1)(c), Florida Statutes (1983). This advantage is not the result of the challenged rule, but instead  as the hearing officer concluded  is a statutory matter which should be remedied, if at all, by the legislature. Finally, though the economic impact statement is not a model of financial forecasting, there was competent, substantial evidence in the record which demonstrated that the department had considered the economic effects of the rule upon existing providers, potential providers, consumers, patients and the health care system as a whole. Accordingly, the hearing officer correctly concluded that any deficiencies in the economic impact statement did not impair the fairness of the rule-making proceedings. Plantation Residents' Association, Inc. v. School Board of Broward County, 424 So.2d 879 (Fla. 1st DCA 1982), pet. for rev. den., 436 So.2d 100 (Fla. 1983); and Division of Workers' *891 Compensation, Department of Labor and Employment Security v. McKee, 413 So.2d 805 (Fla. 1st DCA 1982).
Appellants' reliance on this court's decision in Department of Health and Rehabilitative Services v. Johnson & Johnson Home Health Care, Inc., 447 So.2d 361 (Fla. 1st DCA 1984) (rule providing that existing home health care providers in a given area must be seeing an average of 300 patients per day before a certificate of need can be issued to a new home health care provider is arbitrary and capricious) is misplaced. Johnson is distinguishable because the stated purpose of the rule of 300 in that case was to halt the proliferation of home health agencies, and the record before the hearing officer showed that the rule of 300 "was designed to protect the existing industry from competition." Id. at 362. Furthermore, no reasonable relationship was shown between the numerical threshhold and the "health, morals, safety or welfare of the public." Id. at 363. By contrast, there is no showing in this record that the figures utilized by the Department in Rule 10-5.11(15) were designed to protect the existing industry from competition. On the other hand, the 600 per year catheterization figure was arrived at, in part, by considerations directly related to the quality of care rendered by the laboratories. Moreover, in Johnson, the hearing officer concluded, and this court agreed, that the rule of 300 precluded a balanced consideration of all the statutory criteria; and this court further determined that the "exceptions" to that rule were uncertain in their meaning and therefore arbitrary. Rule 10-5.11(15)(f), by comparison, contains the proviso that the Department will not normally approve new labs unless additional need is indicated by the formula methodology contained in Rule 10-5.11(15). Thus, the numerical factor does not rigidly control the granting or withholding of approval. As pointed out by the hearing officer, should the formula methodology in Rule 10-5.11(15) result in an underestimation of the need for additional services in an area, the applicant has the opportunity to demonstrate need by showing that existing facilities are unavailable or inaccessible, the quality of care in the service area is suffering from overutilization, or by providing other information to illustrate that the situation is not "normal" in the service area.
AFFIRMED.
SHIVERS and WIGGINTON, JJ., concur.
NOTES
[1] The formula requires the 1981 use rate (the number of procedures per 100,000 population in the service area in 1981) to be multiplied by the projected population in the service area in the year in which the proposed lab would initiate service, this year not to be more than two years into the future. This multiplication results in the number of catheterization procedures projected to be delivered at the time of initiation of the proposed new service. By dividing this figure by 600, the Department can project the total number of catheterization laboratories needed during the year in which the proposed lab would initiate service. The Department uses the figure of 600 because the rule provides that no additional cardiac catheterization laboratories may be established in a service area unless the average number of catheterizations performed per year by existing and approved labs performing adult procedures in the service area is greater than 600.