486 So.2d 1341 (1986)
Gerald BALSAM, Howard M. Israel, Lawrence Levinson, Herbert Schwartz, Arnold Zager, and Bruce Jones, Appellants,
v.
Department of Health and Rehabilitative Services, Florida Medical Center, and Charter Medical-Ft. Lauderdale, Inc., Appellees.
No. BE-147.
District Court of Appeal of Florida, First District.
March 31, 1986.
Rehearing Denied May 2, 1986.
*1342 Kenneth G. Oertel, of Oertel & Hoffman, P.A., Tallahassee, for appellants.
John M. Carlson, Asst. Gen. Counsel, HRS, Tallahassee, for appellee HRS.
Eric B. Tilton and Thomas W. Stahl, Tallahassee, for appellee Fla. Medical Center.
Allan C. Sundberg and Cynthia S. Tunnicliff, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, and William E. Hoffman, Jr., and Richard L. *1343 Shackelford of Bondurant, Miller, Hishon & Stephenson, Atlanta, for appellee Charter Medical-Ft. Lauderdale, Inc.
ZEHMER, Judge.
Appellants are a physician, a hospital administrator, a psychologist, and a pharmacologist doing business as a partnership known as Florida Psychiatric Center (FPC). They appeal a final order of the Department of Health and Rehabilitative Services (HRS) denying their application for a certificate of need (CON) for a proposed hundred-bed, short-term psychiatric and substance abuse hospital. We conclude that HRS acted arbitrarily and contrary to law in determining the inventory of "existing and approved" beds under the bed-need methodology in rules 10-5.11(25)(d) and (27)(f), Florida Administrative Code, and in failing to consider the actual quality of care rendered by currently operating institutions providing "like services" to those proposed by appellants.[1]

I.
On June 15, 1983, appellants filed a CON application for a freestanding hundred-bed hospital with eighty short-term psychiatric treatment beds and twenty short-term substance abuse treatment beds. HRS conducted a preliminary review and, on September 28, 1983, issued a state agency action report denying the application because it was "not consistent with the bed need methodology for the addition of psychiatric and substance abuse beds in accordance with chapter 10-5.11(25)(27), Florida Administrative Code." HRS pointed out that appellants placed major emphasis on the teaching and research aspects of their proposal, but that such aspects were not sufficient to overcome the lack of projected bed need under the mathematical formula contained in the rule. The report does not reveal any attempt to evaluate the "availability, quality of care, efficiency, appropriateness, accessibility, extent of utilization, and adequacy of like and existing health care services and hospices in the service district of the applicant," as required by section 381.494(6)(c)2, Florida Statutes (1983), in determining need for the proposed project; rather, the report indicates that primary reliance was placed on the numerical bed-need formula provided in the rule.
Appellants petitioned for a formal 120.57 administrative hearing to review denial of their application. Florida Medical Center (FMC) and Charter Medical-Ft. Lauderdale, Inc. (Charter), were granted leave to intervene in the proceeding because FMC was an existing hospital in Broward County providing, inter alia, psychiatric treatment services, and Charter was a CON applicant for short-term psychiatric beds that had been preliminarily approved by HRS.
Prior to the formal hearing, FPC filed a challenge to the validity of those portions of rules 10-5.11(25) and (27), Florida Administrative Code, setting forth the mathematical formula for determining short-term psychiatric and substance abuse bed need.[2] Appellants contended in the rule-challenge proceeding that the formula improperly prevented an applicant from presenting other relevant facts that would demonstrate need in a particular locality even *1344 though a need was not shown by calculations pursuant to the formula. A portion of this rule challenge was resolved by stipulation between appellants and HRS, in which it was agreed that expert testimony or other evidence of bed need would be admissible if predicated upon relevant criteria.
At the final hearing on appellants' application, held in May and June 1984, appellants called twenty-four witnesses, twenty of whom were certified as experts in their fields. Evidence was received on a wide array of technical subjects to prove that the proposed facility was needed in Broward County. The evidence addressed the actual number of short-term psychiatric and substance abuse beds existing in Broward County, the ability of existing facilities to expand, the overcrowding of psychiatric and substance abuse facilities, financial barriers to admission at current treatment centers, the use of nonpsychiatric hospitals for the treatment of psychiatric patients, the lack of treatment available for the significant geriatric population in the district, the lack of open psychiatric wards in the area, the unique holistic treatment philosophy of the proposed facility, and the research and training capabilities of the proposed facility.
HRS and the two institutional appellees presented testimony by numerous witnesses to controvert appellant's evidence. HRS staff members testified that they determined the current inventory of short-term psychiatric and substance abuse beds for use in the bed-need formula by looking at the number of beds licensed and approved by HRS, regardless of whether such beds had actually been placed in operation or were likely to be placed in operation in the near future. They also testified that they evaluated the quality of care provided by current treatment centers only by looking at whether such centers were properly licensed and accredited by the Joint Commission on Accreditation of Hospitals. No further inquiry was made because HRS assumed that if a licensed and accredited hospital was providing at least minimum-quality care it was acceptable because if the level of care was below such minimum its license or accreditation would be revoked.
In his recommended order of September 27, 1984, the hearing officer thoroughly evaluated the evidence presented and made extensive findings of fact. Among other things, the hearing officer found that HRS denied the CON application solely on the basis of its mathematical formula of bed need and did not explicitly evaluate the other criteria set forth in section 381.494(6)(c), Florida Statutes (1983),[3] particularly the criteria regarding quality of care and availability of like and existing health care facilities in the proposed service area. The hearing officer found that HRS's determination *1345 of bed need under the formula was incorrect because HRS used an inventory number for "existing and approved" beds which did not reflect the actual number of available beds in operation. The hearing officer made findings as to the current number of short-term psychiatric and substance abuse beds actually available in the district, applied the bed-need methodology in the rule, and determined that a sufficient bed need existed to warrant granting FPC's application for a CON.
The hearing officer further found that, even if no need was shown by calculations under the formula, an evaluation of the other criteria for determining bed need, as set forth in the statutes and rules, indicated that appellants' CON should be granted. Specifically, the hearing officer found that current health care facilities were overcrowded and often inaccessible; stringent admissions policies often prohibited patients from being admitted to current treatment facilities unless they could demonstrate an ability to pay at the time they sought admission; current facilities provided insufficient care for geriatric patients and appellants' proposed facility was designed to have a flexible admissions policy which would permit it to focus on the need for treatment of geriatric patients; and the unique open design and holistic treatment approach of the proposed facility would be unique to the area and provide quality of care superior to that being provided by the current facilities. In light of these findings, the hearing officer concluded that appellants' CON application should be granted.
HRS considered the recommended order, but rendered a final order denying appellants' CON application. HRS accepted the findings of fact, but concluded that the hearing officer had misinterpreted and misapplied rules 10-5.11(25) and (27) when he determined the number of "existing and approved" beds based on the number of beds in operation at the time of the hearing. HRS stated that such construction of the rules would result in drastic overbedding because it failed to consider licensed beds that could be made available but were not yet in operation. HRS stated its policy with respect to determining inventory, and reaffirmed that the mathematical calculation under the bed-need formula in the rule revealed no need for the beds proposed by appellants.
HRS also concluded that the hearing officer misinterpreted and misapplied the cited rules when he found that the other criteria supported issuance of the CON. HRS maintained that the weight to be accorded other criteria was solely within the discretion of HRS and that it had examined the various criteria and determined that they did not override the lack of need shown by the bed-need formula. HRS reaffirmed its policy that the quality of care of current treatment facilities would be deemed acceptable to fully satisfy this statutory criteria so long as such facilities remained licensed and accredited. Further, HRS indicated that the statutes and rules do not permit a comparison between the quality of care of current facilities and that of the proposed facility. Based on its conclusion that the hearing officer had misinterpreted and misapplied the applicable statutes and rules, HRS denied appellants' application.

II.
Appellants present two points on appeal. First they contend that HRS acted arbitrarily, capriciously and contrary to law in rejecting the hearing officer's finding of fact that a balanced consideration of all the criteria in rules 10-5.11(25) and (27) demonstrates need for the FPC facility in Broward County. Second, they argue that HRS acted arbitrarily, capriciously and contrary to law by changing the findings of fact in the hearing officer's recommended order because (a) the number of "existing and approved" beds in Broward County is a matter of fact susceptible to proof rather than a matter of rule interpretation and policy, and (b) the hearing officer's findings *1346 of fact regarding the number of short-term psychiatric and substance abuse beds in Broward County are supported by competent, substantial evidence and the rejection of these findings by HRS does not comply with the requirements of section 120.57(1)(b)(9), Florida Statutes (1983), that an agency "may not reject or modify the findings of fact unless the agency first determines from a review of the complete record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence."
HRS contends, on the other hand, that it has not overturned any of the hearing officer's findings of fact but, rather, has simply overturned his erroneous construction and application of the relevant statutes and rules. HRS contends that, since it has the discretion to construe and apply its own rules, its construction can be reversed on appeal only if shown to be clearly erroneous. The other appellees support the contentions made by HRS.

III.
We agree that HRS has the authority to "reject or modify the conclusions of law and interpretation of administrative rules in the recommended order," section 120.57(1)(b)(9), Florida Statutes (1983), and that its construction of its administrative rules should not be overturned on appeal unless "clearly erroneous." Pan American World Airways v. Florida Public Service Commission, 427 So.2d 716, 719 (Fla. 1983). The hearing officer construed "existing and approved" beds to include only beds in actual operation at the time the application was considered. We hold that HRS acted within its discretion in rejecting this construction and the resulting misapplication of the rule.
On the other hand, we do not agree that HRS's own construction and application of its rule is completely free of error. While the inventory of beds used in the formula need not be limited to those beds in actual operation at a particular time, HRS has, in determining the existing bed inventory, erroneously ignored "facts within its knowledge associated with other CONs deemed relevant to a pending CON request." University Community Hospital v. Department of Health and Rehabilitative Services, 472 So.2d 756, 758 (Fla. 2nd DCA 1985).
In its initial review, HRS determined the inventory of existing beds by sending a letter to all health care providers shown by HRS records to have CON-approved short-term psychiatric and substance abuse beds asking them to confirm the existence of such beds. The letter contained notice that if the provider failed to respond within a given time HRS would assume that the number of beds reflected in its records was correct and the facility would be deemed to have that number of licensed short-term beds available or in operation. While this procedure for establishing inventory might have been sufficient to place the burden on the applicant to prove that the inventory reflected in HRS records was incorrect, it did not conclusively establish the correct inventory of such beds as a matter of fact. HRS was not free to ignore the facts, proved by substantial competent evidence, showing that the actual number of short-term psychiatric and substance abuse beds was considerably different from that reflected in the HRS records.
HRS makes a persuasive argument for including, as part of the bed inventory, CON-approved beds which have not been placed in operation but can be opened in the future. It is logically sound, for example, to include fifty approved beds in inventory, although only thirty beds are in operation, if the additional twenty beds previously approved can be made available by the health care provider for use as patient demand increases. Whether such approved, although nonexistent, beds should be included in inventory for the particular planning horizon to which the application is *1347 addressed depends upon a number of factual considerations, such as whether the physical plant can house the additional beds and, if not, the probability of new construction and, if use of the additional beds would necessitate a change in services, whether such change is probable. These factual issues must be determined upon the information made known to HRS or the hearing officer. We need not decide at this time whether HRS, by including in inventory a number of approved-but-nonexisting beds at various hospitals in the area,[4] acted within its discretion, because we are compelled to conclude that HRS's approach to calculating the inventory of short-term psychiatric and substance abuse beds at Coral Ridge Hospital was so clearly erroneous as to be dispositive of the bed inventory issue raised in this appeal.
Using the procedure previously described for determining inventory, Coral Ridge was notified that HRS records showed it to be licensed for eighty-six short-term psychiatric and substance abuse beds.[5] When Coral Ridge did not respond to this notice, HRS presumed its records to be correct and used this bed count in inventory. Evidence presented by appellants at the hearing indicated, however (and the hearing officer so found), that Coral Ridge "offers a unique long-term care known as `orthomolecular' treatment to patients who are substantially drawn from across the nation and abroad" (Recommended Order, p. 13-14).[6] This treatment "typically continues for a year or more and is given patients who have not responded to conventional treatment." Id. Very few patients at Coral Ridge come from Broward County, and "short-term patients who seek admission are referred to ... other local facilities." Id.
HRS does not contend that there is an absence of competent substantial evidence to support the hearing officer's findings of fact regarding the use and availability of Coral Ridge beds to local residents. It argues that such findings are wholly irrelevant to the proper inventory of beds required under its interpretation of the statutes and the bed-need methodology prescribed in the rules. HRS presented no evidence that Coral Ridge would convert its entire "ortho-molecular treatment" program from a long-term to a short-term program. Although appellees argue that there was some evidence before the hearing officer to indicate that some of the treatment at Coral Ridge might be classified as short-term in nature, this was primarily a factual issue to be resolved by the hearing officer upon the evidence in the record. In light of the hearing officer's finding of fact that Coral Ridge has been and is using all of its beds for long-term treatment and, further, that most of its patients come from outside Broward County,[7] to count such beds in the inventory of "existing and approved" beds in the local *1348 area is so arbitrary it cannot stand. The eighty-six beds at Coral Ridge must be deleted from the HRS inventory of short-term beds. When that number is added to the sixteen short-term beds which HRS concedes are needed in Broward County, it appears that total bed need exceeds the hundred beds applied for by appellants.

IV.
We also conclude that HRS has incorrectly conceived its responsibilities with respect to application of the other pertinent criteria in section 381.494(6)(c), Florida Statutes (1983), to appellants' application. HRS argues that it has policymaking discretion to determine the weight to be given other statutory and rule criteria when a lack of need is shown by the bed-need formula calculations. While we agree that HRS has such discretion, we hold that it has not properly exercised this discretion in at least two respects.
First, HRS's policy of evaluating the adequacy of care offered by existing facilities based solely on whether such facilities are licensed and accredited fails to comport with the statute. As in the case of determining inventory, this may serve as a convenient starting point, but it does not satisfy the inquiry required by the statutes and rules. The fact of licensing and accreditation may shift the burden of proof to the applicant, but the applicant is still entitled to present evidence regarding the "availability, quality of care, efficiency, appropriateness, accessibility, extent of utilization, and adequacy" of the existing facilities. § 381.494(6)(c)2, Fla. Stat. (1983). HRS abandons its statutory duty when it incorporates all the above criteria into the single consideration of whether the existing facilities are licensed and accredited. In the present case there was substantial evidence to support the hearing officer's findings regarding availability and quality of care in existing facilities. These findings indicate that existing facilities are regularly crowded and frequently unavailable, that existing facilities have financially restrictive admissions policies which often render their beds unavailable to most patients during evenings and weekends, and that existing facilities provide very little in the way of treatment for geriatric patients. HRS is not permitted to ignore these facts in carrying out its statutory duty.
HRS argues that the statutes and rules do not provide authority for it to compare the quality of care in existing facilities to the quality of care in the proposed facility. We disagree. Section 381.494(6)(c)2 provides that the department shall review the quality of care of like and existing health care services and subsection 3 provides that the department shall evaluate the quality of care to be rendered by the applicant. Inherent in this statutorily mandated evaluation of the applicant and existing providers is the requirement that HRS compare the quality of care where, as in the instant case, there are significant differences between the overall method of care offered by existing providers and the applicant. The hearing officer repeatedly emphasized the significant differences in the type of care to be offered by the proposed facility and that offered by existing facilities. For example, the proposed facility will provide a unique open environment and holistic therapy that is unavailable in Broward County. Further, the proposed facility, unlike existing facilities, will have a unique admissions policy with respect to patient finances that will allow patients immediate admission without the necessity of showing ability to pay. The proposed facility will have specialized treatment programs and separate wards for adolescents and geriatric patients, which are currently unavailable in the Broward County area. Finally, no existing or approved facility in Broward County serves as a research or training center, and the proposed project will meet this need. HRS did not exercise *1349 its discretion in compliance with the applicable statutes when it declined to consider these differences in comparing the proposed project with existing facilities.
Second, HRS acted arbitrarily and abused its discretion by placing too much emphasis upon the controlling nature of the bed-need formula and failing to consider the other criteria under the statutes and rules. Although the language of Rule 10-5.11(25)(c), Florida Administrative Code, stating that HRS will not "normally" approve new beds unless additional need is indicated by the formula was upheld in Humana, Inc. v. Department of Health and Rehabilitative Services, 469 So.2d 889 (Fla. 1st DCA 1985), we specifically noted in the opinion that an applicant should have "the opportunity to demonstrate need by showing that existing facilities are unavailable or inaccessible, the quality of care in the service area is suffering from overutilization, or by providing other information to illustrate that the situation is not `normal' in the service area." Id. at 891. Similarly, in Department of Health and Rehabilitative Services v. Johnson & Johnson Home Health Care, Inc., 447 So.2d 361, 363 (Fla. 1st DCA 1984), we emphasized that "a balanced consideration of all the statutory criteria" in section 381.494(6)(c) is necessary.
The bed-need formula is part of a rule having general statewide application and should be viewed merely as the beginning point for determining need. The formula is so broad in scope that it cannot be treated as taking into consideration all the peculiar conditions found in a particular area sought to be served by the applicant. While the bed-need formula shifts the burden from HRS to the applicant to show a need where none is shown by calculations under the formula, HRS should not simply stand on these calculations and abandon its responsibility to consider and weigh the other criteria. The criteria in section 381.494(6)(c) involve mixed questions of fact and policy. Therefore, HRS may not reject the hearing officer's findings of fact by treating the issue as solely one of policy. Its function is to apply its policy to the facts as found so long as such facts are supported by competent, substantial evidence. § 120.57(1)(b)9, Fla. Stat. (1983).
For the foregoing reasons, the Department's final order is reversed and the cause is remanded for further consideration of the remanded order consistent with this opinion.
REVERSED and REMANDED.
THOMPSON, J., concurs.
WENTWORTH, J., dissents with written opinion.
WENTWORTH, Judge, dissenting.
I respectfully dissent because my reading of the agency order in light of the record does not show that it declined to consider or ignored pertinent facts in denying the application, or that it collided with the cited precedent. The order references evidence as to Coral Ridge Hospital, expressly recognizes that the statutes and rules "allow for a certificate of need to be granted even if the mathematical formula is not satisfied," and makes a determination that "no circumstances exist in this case ... sufficient to override the mathematical formula." Although the order errs in stating unequivocally at one point that section 381.494(6)(c), Florida Statutes, does not "authorize a comparative review of the applicant against existing facilities," I would find reconsideration unnecessary because a comparative review was ultimately accorded when the agency expressly recognized that the applicant would "serve as a research and training center ... may provide some innovations and may improve quality of care to some extent, [but] this still does not justify creating a significant surplus of beds when existing facilities are of adequate quality as evidenced by JCAH accreditation and lack of licensure problems."[1] *1350 The extremely speculative nature of such a comparison was also properly noted in the order. The agency has in my opinion properly corrected the hearing officer's application of numerical bed need methodology, and permissibly drawn a distinction between the objective standards used in that methodology and the other criteria which must also be applied, subject to the usual rules of administrative review. I would affirm, in recognition of the legislative policy and prerogatives inherent in the certification process and expressed in the order.
NOTES
[1] The standard of appellate review specified in section 381.494(8)(e), Florida Statutes (1983), states that "the court must affirm the decision of the department unless the decision is found to be arbitrary, capricious, or not in compliance with this act."
[2] Appellants were particularly concerned about the effect of certain provisions in rule 10-5.11(25)(c) providing that "a favorable need determination for proposed general acute care psychiatric inpatient services will not normally be given to an applicant unless a bed need exists according to paragraph (25)(d) of this rule [the formula methodology]. A favorable Certificate of Need determination may be made when the criteria, other than as specified in (25)(d), as provided for in section 381.494(6)(c), Florida Statutes, and paragraph (25)(e) of this rule, demonstrate need." A substantially similar provision is also found in rule 10-5.11(27)(e).
[3] Section 381.494(6)(c) provides in part:

(c) The department shall determine the reviewability of applications and shall review applications for certificate-of-need determinations for health care facilities and services, hospices, and health maintenance organizations in context with the following criteria:
1. The need for the health care facilities and services and hospices being proposed in relation to the applicable district plan and state health plan adopted pursuant to Title XV of the Public Health Service Act, except in emergency circumstances which pose a threat to the public health.
2. The availability, quality of care, efficiency, appropriateness, accessibility, extent of utilization, and adequacy of like and existing health care services and hospices in the service district of the applicant.
* * * * * *
4. The availability and adequacy of other health care facilities and services and hospices in the service district of the applicant, such as outpatient care and ambulatory or home care services, which may serve as alternatives for the health care facilities and services to be provided by the applicant.
* * * * * *
7. The need for research and educational facilities, including, but not limited to, institutional training programs and community training programs for health care practitioners and for doctors of osteopathy and medicine at the student, internship, and residency training levels.
[4] Many of the approved beds included in inventory figures by HRS are not in operation because the physical plant of the health care provider cannot accommodate the additional beds. The logic of including these beds in inventory is, at best, questionable.
[5] Short-term psychiatric beds are defined as follows:

(25) Short Term Hospital Inpatient Psychiatric Services.
(a) Short term hospital inpatient psychiatric services means a category of services which provides a 24-hour a day therapeutic milieu for persons suffering from mental health problems which are so severe and acute that they need intensive, full-time care. Acute psychiatric inpatient care is defined as a service not exceeding three months and averaging a length of stay of 30 days or less for adults and a stay of 60 days or less for children and adolescents under 18 years.
Fla. Admin. Code Rule 10-5.11(25).
[6] Long-term psychiatric beds are defined as follows:

(26) Long Term Psychiatric Services.
(a) Long Term psychiatric services means a category of services which provides hospital based inpatient services averaging a length of stay of 90 days.
Fla. Admin. Code Rule 10-5.11(26).
[7] We reject HRS's contention that it is improper to consider whether currently operating beds are being used by nonlocal persons in determining local bed need under the methodology adopted in its rules. See section 381.494(6)(c)(4), Fla. Stat. (1983).
[1] Cf. sec. 395.003(7):

(7) Whenever the department finds that there has been a substantial failure to comply with the requirements established under this part or in rules promulgated hereunder, the department is authorized to ... suspend, or revoke:
.....
(c) Licensure approval limited to ... a service, within a given premises.
The logical result of appellant's argument with respect to Coral Ridge Hospital's bed usage, in this collateral proceeding for additional bed authorization, is to compel a merger of HRS regulatory functions with new CON issuance functions contrary to the statutory scheme, without the presence of Coral Ridge as a party and without any protection of the public interest in proper bed usage mandated by the statute above quoted.