945 So.2d 574 (2006)
BETHESDA HEALTHCARE SYSTEM, INC., Appellant,
v.
AGENCY FOR HEALTH CARE ADMINISTRATION, State of Florida; and Columbia/JFK Medical Center, L.P., Appellees.
No. 4D05-1430.
District Court of Appeal of Florida, Fourth District.
December 13, 2006.
*575 Robert A. Weiss and Karen A. Putnal of Parker Hudson, Rainer & Dobbs, LLP., Tallahassee, and Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., Palm Beach Gardens, for appellant.
David R. Terry and Robert D. Newell of Newell & Terry, P.A., Tallahassee, for appellee Wellington Regional Medical Center, Inc.
John Beranek, C. Gary Williams, and E. Dylan Rivers of Ausley & McMullen, Tallahassee, for appellee Delray Medical Center, Inc.
Stephen A. Ecenia and J. Stephen Menton of Rutledge, Ecenia, Purnell & Hoffman, P.A., Tallahassee, for appellee Columbia/JFK Medical Center.
FARMER, J.
Bethesda Healthcare System operates a hospital in the City of Boynton Beach. It filed an application for a Certificate of Need (CON) with the Agency for Health Care Administration (AHCA) to move 80 beds from its existing hospital to a satellite hospital in West Boynton, both located in subdistrict 9-5. Columbia/JFK (JFK) filed a similar application to transfer beds from its facility in subdistrict 9-4 to subdistrict 9-5 in West Boynton. Following a formal hearing, the ALJ entered a recommended order denying both applications. AHCA rejected the ALJ's conclusion that *576 Bethesda was required to demonstrate a material improvement. The agency determined, however, that the proposed movement of beds to the subdistrict should be denied, explaining:
"Bethesda failed to demonstrate the need for the health care facility being proposed, the lack of availability, quality of care, or accessibility of the existing hospitals in the subdistrict, the ability of Bethesda to provide quality of care at the proposed facility, the extent to which the proposed services will enhance access to health care for the residents of the subdistrict, the extent to which the proposed facility will foster competition that promotes quality and cost-effectiveness, and that the costs of construction of the proposed facility is a less-costly way to add beds to the subdistrict."
Bethesda appeals and JFK cross appeals. We affirm.
We give great deference to the agency's interpretation of the statutory policy it is to administer. Big Bend Hospice, Inc. v. AHCA, 904 So.2d 610, 611 (Fla. 1st DCA 2005). We will be moved to intervene only by clearly erroneous interpretations of a statute or findings of fact not supported by substantial, competent evidence. Id.; see also § 120.68(7), Fla. Stat. (2004) (appellate court may set aside agency action when its finding of facts is not supported by competent, substantial evidence, its interpretation of law is erroneous, or its discretion was outside agency rules).
Bethesda argues that the denial ignores "established policy and precedent" approving bed transfers within a district. It relies on Gessler v. Dept. of Business and Professional Regulation, 627 So.2d 501 (Fla. 4th DCA 1993), superseded on other grounds, Caserta v. Department of Business and Professional Regulation, 686 So.2d 651 (Fla. 5th DCA 1996), which concluded that:
"[w]hile it is apparent that agencies, with their significant policy-making roles, may not be bound to follow prior decisions to the extent that the courts are bound by precedent, it is nevertheless apparent the legislature intends there be a principle of administrative stare decisis in Florida."
627 So.2d at 504. But Bethesda has not shown AHCA failed to follow its own precedents in considering its application. Gessler itself applies "the fundamental principle that like cases should be treated alike." Pagan v. Sarasota County Public Hospital, 884 So.2d 257, 266 (Fla. 2d DCA 2004) (Canady J., concurring). The two cases that have since relied on Gessler to reverse similar orders both involved an agency's clear refusal to consider its own precedent in reaching a decision. Plante v. Dept. of Business and Professional Regulation, 716 So.2d 790, 791-92 (Fla. 4th DCA 1998) (agency refused to follow own precedents at penalty hearing); Nordheim v. Dept. of Environmental Protection, 719 So.2d 1212, 1214 (Fla. 3d DCA 1998) (failure to consider own precedent not explained by agency).
The final order in this case expressly relied on Manatee Memorial Hospital, L.P. v. AHCA, 23 FALR 1306 (DOAH Nov. 28, 2000); Halifax Hospital Medical Center v. AHCA, DOAH No., 00-0468 (AHCA, Oct. 13, 2000); Kendall Healthcare Group, Ltd v. AHCA, (AHCA, Oct. 15, 2004); Marion County Hospital, (AHCA, Dec. 17, 1999); Memorial Healthcare Group, Inc. v. AHCA, 2003 WL 271266 (DOAH February 5, 2003); and University Community Hospital, Inc. v. AHCA, 2004 WL 1626978 (DOAH July 20, 2004). In each of these cases, CON applications to transfer existing beds within a subdistrict were approved. The mere existence *577 of the Agency's acknowledgment of all these prior decisions discredits Bethesda's argument that precedent was ignored. Additionally the simple fact that the agency previously approved some intra-subdistrict bed transfers does not mean that all intra-subdistrict transfers should or will be approved. In this instance, AHCA's order distinguished Bethesda's application from those decisions as follows:
"In all [of these] cases cited by Bethesda, except Halifax, there were serious access issues involving the main facilities that were addressed by the CON applications for satellite hospitals. In all of the cases cited by Bethesda, including Halifax, all of the hospitals that applied for CONs had underutilized bed space at their main facilities, and expansion of the main facilities was not a feasible alternative to satellite hospitals."
It added that Bethesda had failed to establish that the subdistrict had serious access problems, that its current beds were underutilized, and that there were any physical or cost-prohibitive restraints that would preclude Bethesda from expanding its current location. We note that this explanation is not inconsistent with the governing statute. § 408.035, Fla. Stat. (2004) (criteria for CON include showing of need, availability of similar services in proposed area, extent of enhancement of access to healthcare services achieved by granting CON, cost effectiveness, among others). Here, AHCA's order explicitly considers the statutory criteria and concludes "on balance" that Bethesda failed to meet its burden of proving the need for the change. See McDonald v. Dept. of Banking and Finance, 346 So.2d 569, 582 (Fla. 1st DCA 1977) (agency action deviating from established agency policy and precedent may be valid when it explains the basis for the deviation), superseded on other grounds, Dept. of Highway Safety and Motor Vehicles v. Schluter, 705 So.2d 81 (Fla. 1st DCA 1998).
JFK claims error on cross appeal that its application was "reviewed using a different standard" of need than was applied to Bethesda. JFK argues error in that it was held to an eccentric rule regarding need, while Bethesda was required to prove some lesser need. Specifically, it claims that AHCA's interpretation was in conflict with Central Florida Regional Hospital v. Daytona Beach General Hospital, 475 So.2d 974 (Fla. 1st DCA 1985), and that the interpretation was superseded by the 2004 CON amendments adopted by the Legislature. This does not appear to be so.
Before the 2004 amendments, a CON application for new acute-care beds would not be approved without a published need unless the applicant demonstrated the existence of "not normal" circumstances. Manatee Memorial Hospital v. AHCA, 2005 WL 3733782 at *34 (DOAH, December 1, 2005). The 2004 CON Amendment removed the provision requiring a CON application to increase the number of acute-care beds in an existing facility. See Ch.2004-383, Laws of Fla. (2004) (changing § 408.038 for CON applications). JFK argues that the "practical effect of the `deregulation' of acute care bed additions by the 2004 CON Amendments is that the Agency's subdistrict bed inventories will become irrelevant."
The agency's rejection of this legal analysis is persuasive. It reasons that while JFK's argument that the number of beds in a subdistrict will effectively become irrelevant, it also noted that the agency was still bound by the current statutory criteria calling for an evaluation of "need" under section 408.035(1). § 408.035(1), Fla. Stat. (2004). The determination of "need" still requires an application of the rules relevant to that issue until those rules are *578 amended or changed. See also Manatee Memorial, 2005 WL 3733782 at *34 (citing and concluding same).
Rule 59C-1.038(4)(a), provides that:
"the agency shall not normally approve applications for new or additional acute care hospital beds in any acute care subdistrict . . . unless the average occupancy rate for all existing acute care hospital beds in the subdistrict is at or exceeds 75 percent . . ." [e.s.]
Fla. Admin. Code R. 59C-1.038(4)(a), repealed Apr. 1, 2005. See also Manatee Memorial, 2005 WL 3733782 at *34. Rule 59C-1.038 is based on a former rule. See Rule 59C-1.038. Central Florida found that the transfer of beds within a district (from 4-4 to 4-5) did not fall under Rule 10-5.11(23) for "new or additional beds." 475 So.2d at 975 [e.o.]. As the final order here noted, rule 10-5.11(23) provided that applications would not normally be approved "for new or additional acute care hospital beds in any . . . district if approval of an application would cause the number of beds in that district to exceed the number of beds calculated to be needed. . . ."
Obviously, the distinction between rule 10-5.11(23) and rule 59C-1038(4)(a) is critical to JFK. With the former rule, intra-district transfers did not qualify as "new or additional" beds to trigger the "not normal" analysis. With the current rule, intra-subdistrict transfers do not qualify as "new or additional" beds to trigger the "not normal" analysis. In the final order, the Agency summarized the distinction:
"unlike Bethesda's proposal, JFK's proposal for a satellite office consisted of transferring beds from Columbia Hospital, which was located in Subdistrict 9-4, to its proposed satellite hospital that would be located in Subdistrict 9-5 . . ., JFK's proposal added new beds to Subdistrict 9-5. . . . "
Because the underlying circumstances were different, there is no error of law in holding Bethesda to a "need" standard and JFK to a "not normal" standard.
Finally, as the order suggests, the difference between applying a "need" standard and a "not normal" standard is probably meaningless. The criteria in 2004 CON Amendments essentially require the same showing regardless of which standard is applied. As one ALJ has suggested, "not normal" circumstances "is a phrase of art under the CON law." Manatee Memorial, 2005 WL 3733782 at *34. Humana, Inc. v. Dept. of Health and Rehabilitative Services, 469 So.2d 889, 891 (Fla. 1st DCA 1985), interpreted "not normal" under former rule 10-5.11 to include the
"opportunity to demonstrate need by showing that existing facilities are unavailable or inaccessible, the quality of care in the service area is suffering from overutilization, or by providing other information to illustrate that the situation is not `normal' in the service area."
The 2004 criteria essentially encompass the same factors: availability, quality of care, accessibility and use of existing facilities. § 408.035, Fla. Stat. (2004). Under either standard, therefore, JFK and Bethesda were required to demonstrate "need" to qualify for the CON they sought.
Affirmed.
POLEN and MAY, JJ., concur.