66 So.2d 280 (1953)
PEPPER
v.
PEPPER.
Supreme Court of Florida, Special Division A.
July 10, 1953.
*281 James Halley Ruby, Miami Beach, for appellant.
Robertson & McLeod, Coral Gables, for appellee.
MATHEWS, Justice.
This is an appeal from a final order of dismissal of a suit for divorce.
The facts in this case are simple. The bill of complaint was filed on the 9th day of March, 1953, wherein the appellant alleged that she was a bona fide resident of the County of Palm Beach and State of Florida "and has so resided in said county and state for a period of more than 90 days next preceding and prior to the filing of this bill of complaint."
The parties were married on the 1st day of April, 1950 in the City of New York. A child was born on March 30, 1951. They lived in New York until after the baby was born but their married life had not been happy. The appellant left the appellee in January, 1951, and had not lived nor cohabited with him since said date. Answer was filed and thereafter, petition for temporary alimony, suit money and counsel fees was filed. The suit started out, apparently, to be a contested one, but later during the pendency of the suit, the parties agreed by stipulation as to the custody of the child and this eliminated the principal contest. On April 27, 1953, the Chancellor made an order, which, among other things, contained the following:
"The cause is at issue and counsel for both parties have consented to the trial of the cause on Thursday, April 30, 1953, at two o'clock in the afternoon. At such time the undersigned judge will sit in his chambers for the purpose of hearing such testimony and receiving such proofs as shall be submitted by the parties on all issues involved in the cause. The trial will be continuous, except for necessary recesses, and the parties will be expected to have available at the scheduled time of trial all testimony and proofs on which they shall rely."
Pursuant to the above-mentioned order, a hearing was had before the Chancellor, beginning at 2:00 P.M. on April 30, 1953. At the beginning of the hearing the attorney for the appellant stated: "We will prove to the Court's satisfaction that the plaintiff is a bona fide resident of the State of Florida." The Court said: "All right, go ahead." Thereupon, the appellant was duly sworn and testified that she was then living in Palm Beach at 250 Everglades Avenue, and had resided there since November, 1952, and that her residence had been continuous. She absented herself from the State for a period of about one week on the occasion of her father's funeral *282 who had died in March of 1953. The funeral was in New York. When appellant went to the funeral she left most of her personal belongings at Palm Beach and only took things necessary for the trip. She left the child in Palm Beach during that time with her (appellant's) mother. She further testified that when she came to Florida in 1952, she came to remain indefinitely and that was still her intention. She joined some social organization in Palm Beach and she had a Florida driver's license, which was obtained in November, 1952. She maintained a bank account in Palm Beach. She owned no property but was living with her baby and her mother. Her mother had lived with her since she came to Florida in November of the previous year. Her mother was still living in Palm Beach and intended to stay in Florida indefinitely. Her mother had been attempting to purchase a home and had been looking for one. Her child had been in Palm Beach ever since she came to Florida in November and was still there. As to her financial condition, appellant testified that her mother was supporting her at the time and would continue to do so. Her mother was not employed but her circumstances were such that she did not need to work for a living. Her mother's furniture was still in New York in an apartment which she (the mother) had rented on a month to month basis in order not to move the furniture to Florida until she could buy a home and move it into the home instead of putting it in storage. The residence in which she lived in Palm Beach was a small garden apartment. Before coming to Florida, appellant discussed her intentions with a lawyer in New York. She had known this lawyer for many years. She did not ask him about residence requirements for divorce in Florida because she knew she was moving to Florida anyway. At this point of her testimony the following took place:
"The Court: I will recess the trial for three months.
"Mr. Ruby: May I ask a few questions, your Honor?
"The Court: Yes."
Further testifying, the appellant stated that the attorney in New York suggested to her that it would be easier to get a divorce in Reno, but that it made no difference to her because she was going to be in Florida and in fact would be living in Florida. At this point the following took place:
"The Court: Did you say your mother intends to buy a place to live here?
"The Witness: Yes; she intends to buy.
"The Court: You don't anticipate an early remarriage, do you?
"The Witness: No.
"The Court: Wait another three months. Then I will be more convinced you really intend to live here. I don't want to resolve any doubts I have against you.
"Mr. Ruby: We have no objection to that. The only thing is that I have brought some witnesses down from Palm Beach relative to the corroboration of the grounds.
"The Court: I will hear the testimony."
Nicolleen Silver was called as a witness who testified that she lived in the Hampshire Apartments in Palm Beach, Florida, and had lived there for 7 years. She first met Mrs. Pepper on November 12, 1952, at a plane when she arrived in Florida, and immediately took her, her baby and her mother to her apartment where they lived for approximately two weeks. While at her apartment, Mrs. Pepper was looking for a house to buy or rent "whatever she could get at the time. We also helped them look for a house." The witness further testified that they found a house which they rented for about a year. She saw the Peppers very often. They had all their personal belongings with them. They signed a lease for the apartment which will expire November 15, 1953. Mrs. Ullman, the mother of Mrs. Pepper, was still looking for a house to purchase. She knew of her own knowledge that they had been looking for a house to buy and they leased one for a year because at that time they could not find anything suitable to buy. She definitely knew they intended to live *283 in Florida and make Florida their permanent residence.
Evelyn Budlow testified on behalf of the appellant that she, Mrs. Budlow, resided at 81st Street, Miami Beach, Florida, and knew the appellant and had known her for about 6 years. She knew her in New York. The first time she met her in Florida was in November, 1952. Since Mrs. Pepper had been in Florida, she had seen her on trips to Miami about once a month, and had also talked to her on the phone every week or two. She knew where she was staying at 211 Ridgeview Drive in Palm Beach at the Hampshire Apartments. Mrs. Pepper had told her that she intended to make Florida her home.
This case involves fundamental principles of government far more important than the mere outcome of a divorce suit.
The evidence for divorce was undisputed and was sufficient.
It appears that on April 30, 1953, the Court made an order which was filed and recorded in the Clerk's office on May 1, 1953, reading as follows:
"The trial of this cause, which was begun today, is recessed for a period of not less than three months for the reason that the court, on an inquiry into the bona fides of the plaintiff's residence, was not convinced that the plaintiff is a resident of this state. If during the three months' period she shall continue to reside in the state, the court will, on application and notice, set a date for the resumption of the trial." (Emphasis supplied.)
On May 13, 1953, the Court entered an order of dismissal as follows:
"Since recessing the trial of this cause I have reconsidered the plaintiff's testimony and am convinced that she is not a bona fide resident of the State of Florida.

"The suit is therefore dismissed at the plaintiff's cost." (Emphasis supplied.)
In deciding this case we are confined to what is shown by the record. Article 2 of the Constitution of the State of Florida, F.S.A., is as follows:
"The powers of the government of the State of Florida, shall be divided into three departments; Legislative, Executive and Judicial; and no person properly belonging to one of the departments shall exercise any powers appertaining to either of the others, except in cases expressly provided for by this Constitution."
Section 1 of Article 3 of the Constitution of the State of Florida is in part as follows:
"Section 1. The Legislative authority of this State shall be vested in a Senate and a House of Representatives, * * *."
Pursuant to the authority vested in it, the Legislature enacted Section 65.02, F.S., F.S.A., which reads as follows:
"Residence required. In order to obtain a divorce the complainant must have resided ninety days in the State of Florida before the filing of the bill of complaint."
There are many laws of the State of Florida which are not in conformity with the views of all of the people of the State or even some members of the judiciary. There are those who believe that the residence requirement for divorce should have been left at two years, or one year, instead of 90 days. Others believe that no divorce should ever be granted, while still others, that no divorce should be granted except for adultery. Some members of the judiciary do not believe in capital punishment. A classic example was the late Daniel A. Simmons, Judge of the Circuit Court for Duval County, who was a man of sterling qualities, high ethical standards, and firm Christian principles. He was opposed to capital punishment, but never hesitated to perform the duties imposed upon him by his oath and by the Constitution and the laws in carrying out a verdict of capital punishment; for that was a judicial duty that had been imposed upon him by the Legislature.
As we view the matter, the effect of the various orders shown by this record would be to amend Section 65.02, F.S., F.S.A., by fixing six months as a time of *284 residence instead of three months. For the Judicial Department of the Government to attempt so to amend or modify an Act of the Legislature would constitute an unlawful encroachment by the Judiciary on the Legislative powers, and would be in direct violation of Article 2 of the Constitution of Florida because of the attempt on the part of the Judicial branch to exercise powers appertaining to the Legislative Department of the Government. Section 1 of Article 3 of the Constitution vests all legislative power of this state in the Legislature, composed of a Senate and a House of Representatives.
The courts have been diligent in striking down acts of the Legislature which encroached upon the Judicial or the Executive Departments of the Government. They have been firm in preventing the encroachment by the Executive Department upon the Legislative or Judicial Departments of the Government, The Courts should be just as diligent, indeed, more so, to safeguard the powers vested in the Legislature from encroachment by the Judicial branch of the Government.
The separation of governmental power was considered essential in the very beginning of our Government, and the importance of the preservation of the three departments, each separate from and independent of the other becomes more important and more manifest with the passing years. Experience has shown the wisdom of this separation. If the Judicial Department of the Government can take over the Legislative powers, there is no reason why it cannot also take over the Executive powers; and in the end, all powers of the Government would be vested in one body. Recorded history shows that such encroachments ultimately result in tyranny, in despotism, and in destruction of constitutional processes.
The Judicial Department is not concerned with the wisdom of such legislation as that involved in the present litigation. Whether divorces should be granted, and if granted, only for the cause of adultery; whether the residence requirement should be three months, six months, or two years, are matters for the Legislature to decide; and when the decision has been made, it becomes incumbent upon the Judicial branch to enforce it.
The tendency to reach out and grasp for power in the sphere of governmental activity; for one branch of the Government to encroach upon, or absorb, the powers of another, is the means by which free governments are destroyed. For those who read and listen with discernment, examples of such despotism and tyranny immediately appear in the world today. It is the duty of the Judicial Department, more than any other, to maintain and preserve those provisions of the organic law for the separation of the three great departments of Government.
In this case the uncontradicted testimony set forth in the record shows clearly and unmistakably that the appellant had been a resident of the State of Florida more than 90 days before the filing of the bill of complaint and that such residence was not a "sham" but was bona fide. The testimony of the appellant was fully and completely corroborated by two other witnesses and by all of the facts shown in this record.
There is no testimony or fact appearing in this record from which any inference or conclusion could be drawn that the appellant was not a bona fide resident of the State of Florida. There is no allegation nor suggestion anywhere in the record that she is attempting to perpetrate a fraud upon the Court, except the bare statement of the Chancellor that he wanted three more months to make up his mind, and that he was convinced that "she is not a bona fide resident of the State of Florida." There was no testimony or fact justifying this finding and there was no testimony or fact shown by the record from which an inference or conclusion could be drawn that she was not a bona fide resident of the State of Florida.
In the case of Vilas v. Vilas, 153 Fla. 102, 13 So.2d 807, 808, this Court said:
"We recognize that the chancellor has a broad discretion in matters of this nature, and that ordinarily his *285 ruling should not be disturbed. But where, as here, testimony is admitted without objection and is not contradicted or impeached in any respect, it should be treated as being received by consent and given all the probative force and effect that its ordinary and usual meaning will afford. Montgomery v. State, 55 Fla. 97, 45 So. 879. And when it consists of facts, as distinguished from opinions, and is not essentially illegal, inherently improbable or unreasonable, contrary to natural laws, opposed to common knowledge, or contradictory within itself, it should not be wholly disregarded or arbitrarily rejected, but should be accepted as proof of the issue for which it is tendered, even though given by an interested party. Brannen v. State, 94 Fla. 656, 114 So. 429. Apparently this rule was not observed."
This case should be, and is hereby, reversed, with directions to set aside and vacate the final order of dismissal appealed from, to reinstate the cause, and to proceed to enter a final decree of divorce in accordance with this opinion, and the laws of the State of Florida.
It is so ordered.
ROBERTS, C.J., and TERRELL and SEBRING, JJ., concur.