516 So.2d 995 (1987)
BAYONET POINT REGIONAL MEDICAL CENTER, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. BP-272.
District Court of Appeal of Florida, First District.
November 24, 1987.
*996 Donna H. Stinson of Moyle, Flanigan, Katz, Fitzgerald & Sheehan, Tallahassee, for appellant.
Theodore E. Mack, Asst. Gen. Counsel, Dept. of Health and Rehabilitative Services, Tallahassee, for appellee.
BOOTH, Judge.
This cause is before us on appeal from a final order of the Department of Health and Rehabilitative Services (HRS) denying the application of Bayonet Point Regional Medical Center (Bayonet Point) for a certificate of need (CON) for a cardiac catheterization laboratory (CCL) and an open-heart surgery service.
Appellant contends HRS erred in rejecting the hearing officer's conclusion that need existed. We find merit in that contention.
In the final order, HRS appears to accept the hearing officer's conclusion that need for a CCL service was demonstrated under the "not normal" exception to the methodology referred to in Rule 10-5.11(15)(1)3.o., Florida Administrative Code.[1] However, HRS stated "[b]ecause there is no existing [or] approved open heart surgery service within 30 minutes travel time as required by Rule 10-5.11(15)(i)(5),[2] Petitioner's [appellant's] application to provide cardiac catheterization laboratory services cannot be approved."
The hearing officer found, and HRS agreed, that "[a]bsent Bayonet Point's application for a certificate of need for a cardiac catheterization laboratory, there would be no showing of a need for additional open heart surgery services in District V under Rule 10-5.11(16), Florida Administrative Code."[3] The hearing officer held:
In this case, although the conditions of Rule 10-5.11(16)(h) and (k), Florida Administrative Code, are not met, Bayonet Point's application for open heart surgery should be granted so that its application for a needed cardiac catheterization laboratory will be approvable under rule 10-5.11(15)(i)5., Florida Administrative Code. Meanwhile, due to the large number of open heart surgeries for Pasco County patients which have been and are now performed outside District V, the addition of open heart surgery at Bayonet Point would not be anticipated to significantly reduce the number of open heart surgery cases that will be performed at the existing District V facilities.
However, HRS rejected the hearing officer's recommendation and denied the application.
This court has held that HRS determination of need is a conclusion of law within the exercise of the agency's discretion. Federal Property Management v. Department of Health and Rehabilitative Services, 482 So.2d 475, 477 (Fla. 1st DCA 1986). The agency's interpretation of its own rule *997 is entitled to great weight and persuasive force. Humana, Inc. v. Department of Health and Rehabilitative Services, 492 So.2d 388 (Fla. 4th DCA 1986). Section 381.494(8)(e), Florida Statutes, provides the reviewing court must affirm the agency's decision unless it is found to be arbitrary, capricious, or not in compliance with controlling statutes. Applying the foregoing standards of review, and on consideration of the record and orders below, as well as the argument and briefs of counsel, we find HRS's decision is arbitrary, capricious, and inconsistent with the governing statutes and rules.
The hearing officer recommended granting the CCL, based either on the 1985 use rate which would satisfy rule methodology, or on the "not normal" exception to the rule. He recommended granting the open-heart surgery facilities under the "not normal" exception, based on the need for the CCL and the interdependence of the two services under Rule 10-5.11(15)(i)5. Bayonet Point's application included both services, and the hearing officer appropriately considered them together in making his recommendation. HRS, however, applied strict rule methodology based on numerical data (1981) use rate for the CCL and 1985 use rate for open-heart surgery) to each service and found the numbers wanting. The agency did not allow the interdependency of the services to be a factor affecting its determination and rejected the hearing officer's consideration of the interdependency of the services as "bootstrap" reasoning.
The HRS order concludes that "proficient and cost effective delivery" of services is insured by compliance with rule methodology. However, neither cost nor proficiency was actually contested below. HRS stipulated that Bayonet Point satisfied the necessary criteria relating to financial feasibility and ability to provide services necessary for the issuance of a CON relating to CCL and open-heart surgery programs. As to the existing facilities, there was no finding that the granting of the application would adversely affect the cost or proficiency of present providers of the services.
On the contrary, the hearing officer concluded:
[D]ue to the large numbers of open heart surgeries for Pasco County patients which have been and are now performed outside District V, the addition of open heart surgery at Bayonet Point would not be anticipated to significantly reduce the number of open heart surgery cases that will be performed at the existing District V facilities. (The impact on Tampa General Hospital and District VI utilization has not been made relevant to this proceeding by the stipulation of the parties.) (emphasis added)
There is no existing CCL in Pasco County. The hearing officer found that the adjoining county of Hernando (District III) is within Bayonet Point's primary service area and is without a needed CCL. The hearing officer did not find any adverse affect on the two existing CCLs in District V, which are located in Pinellas County.
Review of the record shows that the hearing officer's findings are supported by the evidence. HRS adopts all these findings other than paragraph six, containing the hearing officer's finding of need. Further, the conclusions of the hearing officer are consistent with the intent of Sections 381.493(2) and 381.494(6), Florida Statutes, and with HRS rules adopted pursuant to those statutes. The HRS rationale for denial of the application  to reject "bootstrapping" of heart surgery facilities based on need for CCL services  is contrary to HRS rule, which does, in fact, tie these services together. Moreover, the order fails to address the actual need.
The other issue raised and considered on appeal is whether HRS violated Section 120.66, Florida Statutes, prohibiting ex parte communications, and violated due process requirements. There was no opportunity for the lower tribunal to address this issue; therefore we remand for an evidentiary hearing.
In light of the findings below and in the absence of any other issue related to fitness or entitlement to the CON, we reverse and remand for entry of an order in accord with the hearing officer's order and consistent *998 herewith.[4] HRS is further instructed to appoint a hearing officer to conduct an evidentiary hearing regarding the allegation of ex parte communications and to make appropriate disposition thereof.[5]
SMITH, C.J., concurs.
ERVIN, J., concurs in part and dissents in part with written opinion.
ERVIN, Judge, concurring and dissenting.
I concur with the majority's decision to remand the cause to HRS with instructions that a hearing officer be appointed to conduct an evidentiary hearing regarding the allegation of ex parte communications, and to make appropriate disposition of the same.
As to HRS's argument that the doctrine of waiver should be applied to preclude appellant from raising the ex parte communication issue for the first time on appeal, on the ground that the agency was never given the opportunity to rule on the question, I consider the argument to be without merit. Appellant moved for rehearing eleven days following the entry of the final order; yet during the pendency of the motion, and before HRS had yet ruled on the merits of the motion, appellant filed a notice of appeal from the entry of the order. HRS relies upon case law, not involving administrative appeals, holding that if an appeal is taken during a pending motion for rehearing, the appeal is in effect an abandonment of the previously filed motion, and jurisdiction is vested immediately in the appellate court. State ex rel. Owens v. Pearson, 156 So.2d 4 (Fla. 1963). Nevertheless, HRS concedes that there is no provision by statute or rule for an agency to retain jurisdiction over its final order, once filed, so as to permit the agency to withdraw the order and modify it. See Taylor v. Department of Professional Regulation, 493 So.2d 498 (Fla. 1st DCA 1986); Systems Management Associates, Inc. v. State, Department of Health and Rehabilitative Services, 391 So.2d 688 (Fla. 1st DCA 1980). HRS nonetheless argues that because Bayonet Point was aware of the existence of the alleged ex parte communications nearly a month before the entry of the final order, it could have properly filed a motion for rehearing, or reopened the record that was filed prior to the entry of the final order.
I do not see how waiver can be applied to the instant case, in view of the lack of any authority allowing the filing of motions following the entry of final administrative orders. I therefore agree with the majority that appellant should be given an opportunity to develop fully its claim regarding the asserted violation of the statutory provision barring ex parte communications.
I cannot, however, concur with the opinion to reverse and remand with directions that HRS issue an order granting the certificate of need (CON) to appellant for both a cardiac catheterization laboratory (CCL) and an open-heart surgery service (OHSS), consistent with the hearing officer's recommendation. In the instant case, as the applicant is unable to establish need for the OHSS, pursuant to the formula contained in Rule 10-5.11(16),[1] Florida Administrative Code, it attempts to do so by demonstrating abnormal circumstances pursuant to Rule 10-5.11(16)(b),[2] which is one of the two generally recognized means for establishing need for the issuance of a CON. See NME Hospitals, Inc. v. Department of Health and Rehabilitative Services, 494 So.2d 256, 257 (Fla. 1st DCA 1986). In my judgment it has failed to prove abnormal circumstances, but, even if I were to accept the majority's view that it has succeeded, I seriously question whether the appropriate *999 remedy is the relief directed by the majority: the granting of the CON. This in my judgment is a decision which, in with a few rare exceptions, is legislatively-reserved exclusively to the licensing agency.

I. Judicial Standards of Review in Florida Over Discretionary Administrative Action.
In addressing our powers of review over a regulatory agency's discretionary decision to grant or deny a license application, I think it important to restate certain fundamental principles regarding licenses. A license is merely a privilege to do business, which is often required as a condition precedent to the right to carry on a business. 51 Am.Jur.2d, Licenses and Permits § 1 (1970). A license, however, is not property in any constitutional sense,[3] nor is it a contract between the authority granting it and the grantee. See State ex rel. First Presbyterian Church v. Fuller, 136 Fla. 788, 187 So. 148 (1939); Holloway v. Schott, 64 So.2d 680 (Fla. 1953).
The adoption of the 1974 Administrative Procedure Act (APA) does not alter the above principles. The APA is a procedural mechanism, providing a forum to exert rights, but was never intended to change substantive law. See Reporter's Comments on Proposed Administrative Procedure Act for the State of Florida, reprinted in 3 A. England and Levinson, Florida Administrative Practice Manual 3 (1979), observing that the APA is intended to provide "due process minima for the operation of Florida administrative agencies... ." It is true that appellate courts have been given broad powers of review over administrative action by Section 120.68, Florida Statutes, but those powers do not include the right to substitute our judgment for that of the agency on an issue of discretion. See Section 120.68(12), Florida Statutes.
This express limitation upon the scope of our review was no doubt a reflection of the legislature's recognition of the doctrine of separation of powers, i.e., as applied to judicial review over agency discretion, that the courts are without power to interfere in the performance of executive duties, particularly where the executive branch is required to exercise discretion in the performance of its constitutional or statutory powers. Indeed, it has been stated that the judicial branch of government, more than any other, has the duty to maintain and preserve the provisions of organic law relating to the separation of the three branches of government, Pepper v. Pepper, 66 So.2d 280 (Fla. 1953), and that courts will not substitute their judgment with reference to matters properly within the domain of the legislative and executive branches of government. Webb v. Hill, 75 So.2d 596 (Fla. 1954). The Florida Supreme Court, for example, has cautioned that promiscuous intervention by the courts in the affairs of administrative agencies, except for most urgent reasons, will inevitably result in the dethronement of the agencies and the substitution of the courts in their place. Odham v. Foremost Dairies, Inc., 128 So.2d 586 (Fla. 1961).
In their attempts to maintain the delicate balance between the judiciary's review powers over administrative action and the proper deference owed by the judiciary to such action, the Florida Supreme Court and the various appellate district courts have established various standards of review. For example, in reviewing administrative interpretations of regulatory statutes or rules, the Florida Supreme Court has stated that such interpretations are entitled to great weight, and will not be overturned by the courts unless they are clearly erroneous. See Department of Insurance v. Southeast Volusia Hospital District, 438 So.2d 815, 820 (Fla. 1983), appeal dismissed, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984); Pan American World Airways v. Florida Public Service Commission, 427 So.2d 716, 719 (Fla. 1983); Graham v. Estuary Properties, Inc., 399 So.2d 1374, 1380, n. 10 (Fla.), cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981). Moreover, in cases where "an *1000 agency elects to adopt incipient policy in a non-rule proceeding, there must be an adequate support for its decision in the record of the proceeding." Florida Cities Water Co. v. Florida Public Service Commission, 384 So.2d 1280 (Fla. 1980).
Similarly, this court also frequently stated that agencies are afforded wide discretion in the interpretation of a statute that they administer, and, as a natural consequence of such recognition, the reviewing court should defer to any interpretation that is within the range of possible interpretations. Natelson v. Department of Insurance, 454 So.2d 31 (Fla. 1st DCA 1984), review denied, 461 So.2d 115 (Fla. 1985); Department of Health and Rehabilitative Services v. Wright, 439 So.2d 937 (Fla. 1st DCA 1983); Department of Administration v. Nelson, 424 So.2d 852 (Fla. 1st DCA 1982); State, Department of Health and Rehabilitative Services v. Framat Realty, Inc., 407 So.2d 238 (Fla. 1st DCA 1981). This principle has been referred to as the cardinal principle of administrative law. Wilson v. Pest Control Commission, 199 So.2d 777 (Fla. 4th DCA 1967).
Despite continuing judicial declarations of the above standards of review, the courts have failed to apply the standards consistently. Additionally, in their review of administrative discretionary actions, they have not merely reversed with directions that the cause be remanded in order for the agency to carry out some required act of procedure,[4] but in certain cases have directed the agency to issue the disputed contract or permit to the affected party. See, e.g., Groves-Watkins Constructors v. State, Department of Transportation, 511 So.2d 323 (Fla. 1st DCA), on rehearing, 511 So.2d 334 (1987); Gar-Con Development, Inc. v. State, Department of Environmental Regulation, 468 So.2d 413 (Fla. 1st DCA 1985).
Because of the lack of consistency in the application of judicial review standards, I have consulted federal precedent which, in the limited area of review over administrative discretionary decisions, may be of some benefit to our own approach in reviewing agency decisions within the context of our own Administrative Procedure Act (APA).[5] The federal standard of review over arbitrary and capricious agency action is particularly applicable to the issue now before us, in that Section 381.494(8)(e), Florida Statutes, explicitly provides that an appellate "court must affirm the decision of the department unless the decision is found to be arbitrary, capricious, or not in compliance with this act." (e.s.) The federal standard may also be of some benefit in measuring whether the action on appeal complies with our definition of arbitrary and capricious: "A capricious action is one which is taken without thought or reason or irrationally. An arbitrary decision is one not supported by facts or logic, or despotic." Agrico Chemical Co. v. State, Department of Environmental Regulation, 365 So.2d 759, 763 (Fla. 1st DCA 1978), cert. denied, 376 So.2d 74 (Fla. 1979).
Although Florida's APA has no exact parallel to that in the federal APA precluding review from certain types of agency action, in that Section 120.68(1), Florida Statutes, accords broad judicial review to *1001 parties who are "adversely affected by final agency action," and by non-final agency action, "if review of the final agency decision would not provide an adequate remedy," nevertheless the language of the Act in 120.68(12), precluding a reviewing court from substituting its judgment from that of the agency on an issue of discretion is simply, in my opinion, declaratory of the traditional rule[6] recognizing that if there are no judicially manageable standards available for judging how an agency should exercise its discretion, it is impossible to evaluate such action for abuse of discretion.[7] I would therefore regard federal standards as not irrelevant to an analysis of our own review powers over discretionary, administrative actions.

II. Federal Judicial Standards of Review Over Discretionary Administrative Action.
The Federal APA  unlike Florida's  explicitly exempts certain types of administrative action from review. Section 10(a) of the Act (5 U.S.C. § 701) provides: "(a) This chapter applies [relating to reviewability of administrative action], according to the provisions thereof, except to the extent that  (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." Thus, there is in the federal sector a general presumption of reviewability of all agency action, except for the above two areas. The statutory language in section 10(a) parallels the common law. As Professor Davis observes: "[T]he law is in all respects the same as it would be without the APA, because reviewability under the APA always depends on whether a statute precludes review or whether the action is by law committed to agency discretion." Davis, supra, n. 4, § 28:15 at 327.
At common law there was a general presumption of judicial unreviewability over the discretionary acts of administrators. Davis at § 28:1, p. 254. As stated in an early opinion of the United States Supreme Court: "Whenever a statute gives a discretionary power to any person, to be exercised by him upon his own opinion of certain facts, it is a sound rule of construction that the statute constitutes him the sole and exclusive judge of the existence of those facts ... It is no answer that such a power may be abused, for there is no power which is not susceptible of abuse." Martin v. Mott, 25 U.S. (12 Wheat.) 19, 31, 6 L.Ed. 537 (1827) (e.s.). Later the doctrine of unreviewability became one of general reviewability. See American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90 (1902). In Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681, 686 (1967), the Supreme Court for the first time explicitly announced a presumption of reviewability over administrative action, stating that such review would "not be cut off unless there is persuasive reason to believe that such was the purpose of Congress," and commented that the presumption was "reinforced by the enactment of the Administrative Procedure Act... ."
That portion of the federal APA, precluding review "to the extent that ... agency action is committed to agency discretion by law" (5 U.S.C. § 701(a)(2)), was a reflection of the general assumption by the Congressional drafters that judicial review is inapplicable in those rare instances "where `statutes are drawn in such broad terms that in a given case there is no law to apply.'" S.Rep. No. 752, 79th Cong., First Sess., 26 (1945) (e.s.) (quoted in Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 820-21, 28 L.Ed.2d 136 (1971)). Overton Park is generally regarded as the leading case in developing judicial standards of review over informal agency action. Before Overton Park was decided, administrative adjudications were governed by the substantial evidence standard *1002 of review, rulemaking by the arbitrary and capricious standard, and informal action by the abuse of discretion test. M. Shapiro, Administrative Discretion: The Next Stage, 92 Yale L.J. 1487, 1491 (1983). Following the Overton Park decision, the three standards of review have now tended to merge. Id. at 1494.
In Overton Park, the plaintiffs challenged the Secretary of Transportation's decision to construct an interstate highway through a national park. In defending his action before the Court, the Secretary had argued that his discretionary decision was judicially unreviewable. In rejecting this argument, the Court first addressed the threshold question of whether the action was reviewable under Section 10 of the Act (5 U.S.C. § 701). In deciding that it was, the Court observed that there was no clear and convincing evidence of any legislative intent to restrict access to judicial review; that in fact both the Department of Transportation Act and the Federal-Aid Highway Act provided specific law to apply.
As the decision was deemed reviewable, the Court moved next to the standard of judicial review to be applied to the agency's discretionary decision, which was governed by Section 15 of the Administrative Procedure Act (5 U.S.C. § 706), specifically that part providing that a "reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found" which do not meet the fixed statutory standards set forth in 5 U.S.C. § 706.[8] The Court rejected first the substantial evidence standard, observing that this test is authorized only when agency action is taken pursuant to rulemaking, or when the action follows a public adjudicatory hearing. Because the Secretary's informal decision to allow the expenditure of federal funds to build an interstate highway through the park fell in neither category, nor was de novo review required pursuant to subsection (f) of the statute, the Court, in applying the arbitrary, capricious, or abuse of discretion standard, stated that a reviewing court is first required to decide whether the administrator's action was within the scope of his authority. If, after determining that it was, the court should next consider whether, pursuant to section 706(2)(A), the agency's choice of action was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." In order to reach such a decision, a court is required to consider whether the agency's decision was based on a consideration of all relevant factors, and whether there was a clear error of judgment. 401 U.S. at 416, 91 S.Ct. at 823-24. In making this determination, the Supreme Court cautioned: "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Id. at 416, 91 S.Ct. at 824 (e.s.). Accord Motor Vehicle Manufacturers Association v. State Farm Mutual Insurance Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443, 458 (1983). Under the "narrow" standard of review, courts are required to conduct an inquiry that is "`searching and careful,' yet in the last analysis, diffident and deferential." Natural Resources Defense Council, Inc. v. SEC, 606 F.2d 1031, 1049 (D.C. Cir.1979) (citation omitted). Finally, the reviewing court should conclude its examination by deciding whether the agency's "action followed the necessary *1003 procedural requirements." 401 U.S. at 417, 91 S.Ct. at 824 (e.s.).
In summary, as later federal appellate opinions have observed, once a court ensures itself that the agency's reasoning conforms "to certain minimal standards of rationality," it must uphold the agency's action.[9]Ethyl Corp. v. Environmental Protection Agency, 541 F.2d 1, 36 (D.C. Cir.) (en banc) cert. denied, 426 U.S. 941, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976). Such a "standard of review ensures that the agency has engaged in reasoned decision-making, ..., that is both adequately explained, ..., and supported by substantial evidence in the record as a whole." General Chemical Corp. v. United States and Interstate Commerce Commission, 817 F.2d 844 (D.C. Cir.1987).
Further expanding upon its earlier opinion in Overton Park, particularly the "no law to review" standard, the Supreme Court, in construing subsections (a)(1) and (a)(2) of section 701, observed that the former subsection, i.e., that precluding judicial review when statutes so state, applies when Congress clearly expresses its intent to bar review, and the latter section applies
even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the law can be taken to have "committed" the decisionmaking to the agency's judgment absolutely. This construction avoids conflict with the "abuse of discretion" standard of review in § 706  if no judicially manageable standards are available for judging how and when an agency should exercise its discretion then it is impossible to evaluate agency action for "abuse of discretion."
Heckler v. Chaney, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714, 723 (1985) (e.s.).
Thus, reiterating the rule stated in both Overton Park and Heckler: a narrow exception to the presumption of judicial review over administrative action is applicable "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply."[10] 401 U.S. at 410, 91 S.Ct. at 821 (e.s.). Accordingly, if no law limits the exercise of administrative discretion, appellate courts have no standard to guide their review.[11] *1004 In such cases, it is generally regarded that the courts lack jurisdiction to review the contested agency action. See City of Santa Clara v. Andrus, 572 F.2d 660 (9th Cir), cert. denied, 439 U.S. 859, 99 S.Ct. 176, 58 L.Ed.2d 167 (1978).
This court recently approved the federal standard of review  applied in the federal sector to decisions under 5 U.S.C. § 706, the arbitrary and capricious standard  in its review of an agency's action involving the agency's use of new scientific methodology, pursuant to the authority delegated to it in broad, general terms by the legislature, stating:
We conclude that the choice of a particular scientific technique or methodology to explain these statutory terms and establish the control line was intended to lie, by legislative design, with the expertise of the agency. The selection and use of new scientific methodology was a matter of agency discretion that should not be set aside absent a showing that the agency's action is either arbitrary, capricious, an abuse of discretion, or not reasonably related to the statutory purpose. To this extent, therefore, we approve the federal standard for admissibility of scientific evidence in administrative proceedings, urged by DNR, as that standard accords great deference to the policy-making discretion and expertise of regulatory agencies. See e.g., Baltimore Gas and Electric Co. v. Natural Resources Defense Council, 462 U.S. 87, 103, 103 S.Ct. 2246, 2255, 76 L.Ed.2d 437 (1983); Carstens v. Nuclear Regulatory Commission, 742 F.2d 1546 (D.C. Cir.1984), cert. denied, 471 U.S. 1136, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985).
Island Harbor v. Department of Natural Resources, 495 So.2d 209, 217 (Fla. 1st DCA 1986), review denied, 503 So.2d 327 (Fla. 1987). We held in Island Harbor that the setting of coastal construction lines was not a matter of scientific certainty, and that "[t]he legislature's use of scientific terms and words of art in the organic statute, without setting forth more precise definitions, has compelled us to accord considerable  if not extraordinary  deference to DNR's interpetation of these terms and its selection of scientific techniques and methodologies to be employed in carrying out its statutory responsibilities." Id. at 223.
Interestingly, one of the cases this court relied upon in Island Harbor was Baltimore Gas and Electric Co. v. Natural Resources Defense Council, 462 U.S. 87, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983), in which the United States Supreme Court held that rules adopted by the Nuclear Regulatory Commission  empowering licensing boards to assume, for purposes of the National Environmental Policy Act, that the permanent storage of certain nuclear wastes would have no significant environmental impact, and should not affect the Commission's decision regarding whether to license a particular nuclear power plant  were not arbitrary and capricious within the meaning of Section 10A of the Administrative Procedure Act (5 U.S.C. § 706). In so holding, the Court made the following observations:
We are acutely aware that the extent to which this Nation should rely on nuclear power as a source of energy is an important and sensitive issue. Much of the debate focuses on whether development of nuclear generation facilities should proceed in the face of uncertainties about their long-term effects on the environment. Resolution of these fundamental policy questions lies, however, *1005 with Congress and the agencies to which Congress has delegated authority, as well as with state legislatures and, ultimately, the populace as a whole. Congress has assigned the courts only the limited, albeit important, task of reviewing agency action to determine whether the agency conformed with controlling statutes. As we emphasized in our earlier encounter with these very proceedings, "[a]dministrative decisions should be set aside in this context, as in every other, only for substantial procedural or substantive reasons as mandated by statute ..., not simply because the court is unhappy with the result reached." Vermont Yankee [Nuclear Power Corp. v. Natural Resources Defense Council], 435 US [519], at 558, 55 L Ed 2d 460, 98 S Ct 1197 [at 1219 (1978)].
462 U.S. at 97, 103 S.Ct. at 2252, 76 L.Ed.2d at 446 (e.s.). In concluding, the Court observed: "The role of the courts is simply to ensure that the agency has adequately considered and disclosed the environmental impact of its actions and that its decision is not arbitrary or capricious." 462 U.S. at 97-98, 103 S.Ct. at 2252, 76 L.Ed.2d at 447.

III. Application of Federal Standards of Review to the Case at Bar.
If federal review standards have any applicability to our own review of discretionary administrative decisions, a reviewing court's analysis[12] of whether there was an appropriate exercise of that discretion should be as follows: The court should first inquire as to whether the agency has ultimate authority over the question of law. The answer to that question in the case at bar turns on whether the agency has been legislatively granted the power to do that which the appeal challenges  here, the denial of the CON. In the instant case, HRS has been given broad powers of licensing under Section 381.494(8)(a), Florida Statutes. In fact, it is designated "as the single state agency" to so act (e.s.). The department's power of review over applications of CONs for health-care facilities is conducted in consideration of the criteria delineated under section 381.494(6)(c)1-13, including its consideration of the need for the requested facility or service proposed in relation to the applicable district and state health plans. The department is authorized to develop uniform methodologies to aid the local health council in developing a district plan to be submitted to the department and updated periodically, whose elements "are necessary to the review of any certificate-of-need application [that] shall be adopted by the department as a part of its rules." Section 381.494(7)(b)1. HRS clearly possesses broad powers, legislatively-delegated to it, of review over CON applications, and the discretion to "issue, revoke, or deny" them. Section 381.494(8)(a).
Having decided that the agency possesses such power, the reviewing court should next focus on the decision-making process, by determining whether all proper and relevant elements have been considered within the process,[13] and then it must ensure that the administrative decision reflects the appropriate use of such factors. In other words, if an agency's action fails to consider required regulatory statutory criteria, it may be set aside as arbitrary and capricious, or as an abuse of agency discretion. See Jersey Central Power & Light Co. v. Federal Energy Regulatory Commission, 810 F.2d 1168 (D.C. Cir.1987). Thus, a claim that an agency failed to exercise its discretion pursuant to the powers delegated to it is reviewable, "even though its decision on the merits might be unreviewable as committed to agency discretion." Assiniboine and Sioux Tribes of Fort Peck Indian Reservation v. Board of Oil *1006 and Gas Conservation of Montana, 792 F.2d 782, 791-792 (9th Cir.1986) (e.s.). It is at this point that judicial review tends to focus on the agency's explanation for its discretionary choice. Cf. McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977) (the ultimate factual issue which was infused by policy considerations, for which the agency had special responsibility, required explanation by the agency). In my judgment, HRS's rules and the agency's interpretations of them have adequately demonstrated HRS's consideration of all relevant factors involved in the decision reached.
Pursuant to the authority delegated to it, HRS adopted Florida Rule of Administrative Code 10-5.11(16), devising a mathematical formula for the determination of need for open-heart surgery programs in the service area. The hearing officer in fact found that there was no need for an additional OHSS in the district, pursuant to the rule methodology for determining need, because the rule required that all existing open-heart surgery programs must be projected to do 350 or more such procedures per year in 1986, before an additional OHSS could be approved. The hearing officer further found that the rule methodology, when employing less current 1981 utilization rates, projected an average of approximately 342 open-heart surgery procedures per year in the three existing open-heart surgery programs in District V, during the year 1986. Using, however, the more recent 1985 rates, the averaged utilization figures dropped to approximately 317 estimated procedures per year.
While conceding that the methodology set forth in the department's rules did not warrant the issuance of a CON for an OHSS in District V, the hearing officer nevertheless relied upon Rule 10-5.11(16)(b), the not-normal circumstances exception, and found that the methodology in the CCL rule incorporated out-of-date 1981 use-rates, and, if actual 1985 rates were utilized, there would be an established need for one CCL in District V; accordingly, he recommended that CONs be granted for both the CCL and the OHSS.
The department rejected the recommendation, observing the requirements of its adopted rule, forbidding the granting of an application for a CCL unless there is an open heart surgery unit within thirty minutes' travel time by emergency vehicle, and unless CCLs where coronary angioplasty is performed are located in the same health care facility which provides open-heart surgery. The department further noted that there was no evidenced need under the rule's methodology for any additional OHSS in District V, concluding that "the minimum utilization rates prescribed by the rules are intended to insure proficient and cost effective delivery of cardiac catherization laboratory and open heart services. There are no exceptional circumstances justifying approval of petitioner's application to provide open heart surgery."
I should think that the department's interpretation of its own rules would, under the circumstances, conclude this matter. To summarize: We are reviewing an order of an agency in a case where there has been no issue raised that the agency exceeded its delegated legislative authority in adopting rules governing the licensing of CCLs and OHSSs in the applicable service district. Neither is it urged that the agency has violated some provision of the APA, for example, by failing to grant a hearing to a substantially interested party; nor is it contended that there has been a violation of the CON law, such as by the agency's failure to grant comparative review to competing applicants for similar health services, or some other error in failing to follow required procedure. Instead, we have before us the argument that the agency's interpretation of its rule by refusing to apply the not-normal circumstances exception was arbitrarily and capriciously exercised because HRS failed to take into consideration the lack of availability, accessibility or adequacy of like and existing services in the service district.
I am aware we have held that if the methodology provided by rule results in an underestimation of the need for additional service facilities in a given area, the applicant may have the opportunity to demonstrate need by showing that existing facilities *1007 are unavailable, or that the quality of care in the service area is suffering from overutilization, or by showing that the situation is not normal in the applicable area. Humana, Inc. v. Department of Health and Rehabilitative Services, 469 So.2d 889 (Fla. 1st DCA 1985). See also Humana, Inc. v. Department of Health and Rehabilitative Services, 492 So.2d 388 (Fla. 4th DCA 1986). I am also aware that we have recognized the applicant's right to present evidence regarding the availability, accessibility, quality of care, adequacy and extent of utilization of existing facilities in the service area and compare such factors with the intended use of the proposed facility. Balsam v. Department of Health and Rehabilitative Services. These cases reflect the requirement that HRS must take into consideration applicable statutory criteria, or, in other words, make a balanced consideration of all pertinent criteria in reviewing an applicant's request for a CON. The judicial remedy, however, for the failure of the agency to consider all of the applicable licensing criteria is not to remand with directions that a CON be issued, but rather for the agency on remand to consider those requirements it omitted in reaching its decision, and then determine whether the CON should be granted, or give additional reasons why it should not.
The most, however, that the applicant before us has shown is that under current data there has been an underestimation of the need for additional CCLs in the service area  there has been no showing that under current data there exists an underestimated need for an OHSS. In Humana, Inc., the Fifth District Court observed that "the use of the more current data alone is not sufficient to justify an exception to the rule." 492 So.2d at 392 (e.s.). Finally, I think it helpful to remember that we have held that HRS's "determination that factors other than the numerical need as projected by the rule do not reach the level of exceptional circumstances so as to justify deviation from the rule methodology, is a conclusion of law and is therefore a matter within the permissible range of agency discretion." Federal Property Management Corp. v. Department of Health and Rehabilitative Services, 482 So.2d 475, 477 (Fla. 1st DCA 1986).
The application for a CCL was clearly dependent upon the application for an OHSS. Although need under the methodology formula was lacking for the latter service, the majority nevertheless agrees with the hearing officer that the CON must be granted, because updated use-rates established a need for a CCL, despite the provision in the rule that approval of a CCL application will be denied if the proposed CCL is not within thirty minutes' travel time by emergency vehicle from an OHSS. In interpreting its own rule, HRS recognized the interdependency of the two applications, and I consider that it has sufficiently explicated its rationale that there were no abnormal circumstances justifying the issuance of the two CONs. Others may question the wisdom of the regulatory agency's interpretation, but in my opinion it cannot be reasonably argued that the agency's decision was outside the possible range of interpretations.
After a reviewing court has assured itself that all relevant factors entered the discretionary/decisional process, the court should next consider if any external pressures may have affected the operation of that process, i.e., whether the agency's decision was improperly influenced. Cf. Liberty County v. Baxter's Asphalt & Concrete, Inc., 421 So.2d 505 (Fla. 1982) (a public body has wide discretion in soliciting and accepting bids for public improvements, and its decision, in the absence of illegality, fraud, oppression, or misconduct, will not be overturned by a reviewing court even though the decision may appear erroneous).
In the case at bar the majority's opinion has already addressed the issue of whether ex parte communications may have affected the agency's decision by directing remand to the agency for further proceedings. I consider it highly questionable, however, that the existence of an ex parte communication requires as a remedy the outright reversal of the agency's discretionary decision, in that the remedy appears to have been provided by section *1008 120.66(3): by fine or other disciplinary action as the superiors of the person who made the communication may determine.[14]
After the court has followed the above steps, and has assured itself that the agency's decision-making process has complied with all relevant factors, and is free from any improper influences, the core discretionary decision[15] that is the result of numinous discretion cannot or should not be reviewed. In other words, if no statutory standards exist, or if the standards are intended only to guide the agency's decision, the decision should be regarded as "the result of an agency's intuitive or numinous discretionary process, not a court's," Koch, supra, note 6 at 509, which cannot be judicially reviewed without usurping the discretionary function assigned to the agency.
To summarize: I concur with the majority's decision in remanding the cause for the purpose of conducting an evidentiary hearing on the ex parte communication issue, but would otherwise affirm.
NOTES
[1] Currently numbered 10-5.011(1)(e)6, Florida Administrative Code, the rule provides that applications for CCL services will "not normally" be approved unless numerical requirements are met. A similar rule, 10-5.11(16)(b), provides a "not normal" exception for open-heart surgery facilities.
[2] Currently that rule is 10-5.011(15)(1)(e)9.e., Florida Administrative Code:

e. Coordination of Services.
(I) Cardiac catheterization laboratories proposed in a facility not performing open heart surgery must submit, at the time of certificate of need application, a written referral agreement with a facility providing open heart surgery services which is within 30 minutes' travel time by emergency vehicle under average travel conditions.
(II) Cardiac catheterization laboratories where coronary angioplasty is performed must be located in health care facilities which also provide open heart surgery.
[3] HRS based its conclusion that no need exists for an open-heart surgery facility on utilization rates in District V. However, since most of appellant's patient referrals are sent to Tampa, which is in a different district, actual need is unrelated to the rule's formula. The hearing officer found that 1,200 Pasco County (District V) residents per year were being sent for cardiac catheterization to a hospital in Tampa (District VI), and some 300 of these would also undergo open-heart surgery.
[4] Section 120.68, Florida Statutes, provides that the court may "order agency exercise of discretion when required by law." Compare 5 U.S.C.S. § 706. See 4 K. Davis, Administrative Law § 23:9 at 160-63 (2d ed. 1983).
[5] Due to our disposition of Issue I, it is unnecessary to address Issue II concerning application of Rule 10-5.11(15), as it existed at the time of the final hearing.
[1] Since renumbered as Rule 10-5.011(1)(f), Fla. Admin. Code.
[2] Currently Fla. Admin. Code Rule 10-5.011(1)(f)2.
[3] Once, however, a license is issued, it has the quality of property. Wilson v. Pest Control Commission, 199 So.2d 777 (Fla. 4th DCA 1967).
[4] See, e.g., NME Hospitals, Inc. v. Department of Health and Rehabilitative Services, 492 So.2d 379 (Fla. 1st DCA 1985) (on rehearing), review denied, 500 So.2d 544 (Fla. 1986) (HRS erred in refusing to grant comparative review to later applicant for CON, because earlier filed application was incomplete, therefore it should never have been accepted for review); Gulf Court Nursing Center v. Department of Health and Rehabilitative Services, 483 So.2d 700 (Fla. 1st DCA 1985) (applicant that had filed CON application to a specified target year entitled to comparative review with other applicants that had not applied for a CON for the same fixed pool of beds as the later applicant, but were nonetheless granted a CON from that pool, despite the fact that their application applied to an earlier planning year).
[5] I acknowledge that the federal judiciary's track record has often been as inconsistent in its review of agency discretionary decisions as has the Florida judiciary's experience. See comments of Professor Davis. K. Davis, 5 Administrative Law Treatise, § 29.15 at 394 (2d ed. 1984) [hereafter Davis]. Nevertheless, an adoption of certain federal standards of review may in some small measure help to crystallize some of our own generalized standards, particularly in those areas where the legislative delegation of discretion to the agency is broadly conferred, as discussed infra.
[6] See discussion, infra, under part II of this dissent.
[7] The concept of nonreviewability of agency action is not unique in Florida. For example, in its construction of section 120.68(12), forbidding reviewing courts from substituting their judgment for that of the agency on an issue of discretion, the Florida Supreme Court has held that courts have "no authority to review the penalty unless agency findings are in part reversed." Florida Real Estate Commission v. Webb, 367 So.2d 201 (Fla. 1978) (e.s.).
[8] Section 706(1) and (2) provides:

(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be 
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title [5 USCS §§ 556 and 557] or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
[9] The scope of a court's review over agency action was recently encapsulated by the Third Circuit Court of Appeals, observing that while Section 701(a)(2) of the act precludes judicial review of any agency action which is committed to agency discretion by law, nonetheless section 706(2)(a) permits judicial review of agency action found to be arbitrary, capricious or an abuse of discretion, or otherwise not in accordance with the law. Chong v. Director, United States Information Agency, 821 F.2d 171, 175 (3d Cir.1987).
[10] The "no law to apply" rule, stated in Overton Park, means simply that "there are no standards by which to evaluate the decision. If there are no standards to apply, a court cannot review a decision without usurping the discretionary function assigned to the agency." Koch, Judicial Review of Administrative Discretion, 54 Geo. Wash.L.Rev. 469, 502 (1986) [hereinafter cited as Koch]. Koch refers to administrative discretionary decisions as "numinous discretion"  decisions "that cannot be held to some expressed, implied or derived standard." Professor Dworkin characterizes such decisions as discretion in the "strong" sense of the term:

We use "discretion" sometimes not merely to say that an official must use judgment in applying the standards set [for] him by authority, or that no one will review that exercise of judgment, but to say that on some issue he is simply not bound by standards set by the authority in question... . An official's discretion means not that he is free to decide without recourse to standards of sense and fairness, but only that his decision is not controlled by a standard furnished by the particular authority we have in mind when we raise the question of discretion. Of course, this latter sort of freedom is important; that is why we have the strong sense of discretion. Someone who has discretion in this [strong] sense can be criticized, but not for being disobedient... .
R. Dworkin, Taking Rights Seriously, 31-33 (1977).
[11] Although the facts in Heckler related to an agency's refusal to take certain enforcement actions under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301, et seq., to prevent violations of the Act, the standard stated in Heckler has not been limited to an agency's decision not to take enforcement actions. See, e.g., Interstate Commerce Commission v. Brotherhood of Locomotive Engineers, et al., 482 U.S. ___, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987) (agency's denial of a petition to reopen and reconsider its order not subject to judicial review, because adequate standard of review was impossible, under the circumstances, to devise); Padula v. Webster, Director, F.B.I., 822 F.2d 97 (D.C. Cir.1987) (decision of federal agency not to hire homosexual applicant immune from judicial review because it was a decision committed to agency discretion by law); Woodsmall v. Lyng, 816 F.2d 1241 (8th Cir.1987) (denial of a loan application by the Farmers Home Administration unreviewable on the ground that the statute, directing that the Secretary "may" make loans to applicants whom he determines to have the ability to repay, establishes no meaningful standards for judicial review); Greenwood Utilities v. Hodel, 764 F.2d 1459, 1464 (11th Cir.1985) (agency's decision regarding the distribution of excess power generated at flood control dams unreviewable because the act authorizing such discretionary power did not establish a standard by which the decision could be reviewed).
[12] I am indebted to Professor Koch for the above analysis. See Koch, supra note 10 at 507-508 n. 6.
[13] As applied to review of CON appeals specifically, we have required HRS to make a "balanced consideration of all the statutory criteria" (pertaining to the criteria to be considered by HRS in its review of a CON application) in Section 381.494(6)(b), Florida Statutes. See Balsam v. Department of Health and Rehabilitative Services, 486 So.2d 1341, 1349 (Fla. 1st DCA 1986); Department of Health and Rehabilitative Services v. Johnson and Johnson Home Health Care, Inc., 447 So.2d 361, 363 (Fla. 1st DCA 1984).
[14] In saying the above, I would observe that the Health Facilities and Health Services Planning Act contemplates that some minimal sort of ex parte communication may be necessary during the review process, in that section 381.494(8)(b) empowers the department to adopt rules defining the limits of ex parte contacts, which "shall be [adopted] in accordance with the Administrative Procedure Act."
[15] The core discretionary decision is defined as "the central issue in an administrative determination involving the exercise of discretion." See Koch, supra note 6 at 470 n. 4.